STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-295


JAMARCUS THOMAS

VERSUS

LOUINA DENIS THOMAS


**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 16-0576
HONORABLE A. GERARD CASWELL, DISTRICT JUDGE

**********

**PHYLLIS M. KEATY**
**JUDGE**

**********

Court composed of John D. Saunders, Billy Howard Ezell, and Phyllis M. Keaty,
Judges.


**JUDGMENT RENDERED**
**AND OTHERWISE AFFIRMED.**


Jamarcus Thomas
In Proper Person
1241 Crochet Street
Opelousas, Louisiana  70570
(337) 501-8933
Plaintiff/Appellant

William C. Vidrine
Vidrine & Vidrine
711 West Pinhook Road
Lafayette, Louisiana  70503
(337) 233-5195
Counsel for Defendant/Appellee:
    Louina Denis

**KEATY, Judge.**

A father, in proper person, appeals a judgment concerning the custody, child support, and visitation of his minor son. For the following reasons, we amend and render.

## FACTS AND PROCEDURAL HISTORY[1]

This matter has been pending since February 12, 2016, when Jamarcus Thomas, through counsel, filed a petition for divorce from Louina Denis, whom he married on October 9, 2015. In an amended petition, Mr. Thomas requested the issuance of a Temporary Restraining Order (TRO) to prevent Ms. Denis from coming near his home or place of business. According to the pleadings filed by Mr. Thomas, no children had been born of the marriage before the parties separated in January 2016. In an answer and reconventional demand, Ms. Denis asserted that she was "currently pregnant and due to give birth on July 2, 2016." She sought, and was granted, a TRO on April 27, 2016, preventing Mr. Thomas from harassing her and from going to her home and place of business. Ms. Denis gave birth to a son, Isaiah Jovan Thomas, on June 25, 2016. Paternity testing later revealed a 99.99% probability that Mr. Thomas is Isaiah's biological father. According to court minutes dated July 11, 2016, the trial court vacated the earlier granted TRO and entered a reciprocal order prohibiting the parties from harassing each other and allowing the father limited visitation with the child. In early July 2016, Mr. Thomas's original counsel filed a motion to withdraw on the basis that Mr. Thomas had retained other representation. On July 25, 2016, Mr. Thomas, in proper person, filed a motion for him and Ms. Denis to undergo mental health evaluations pursuant to La.R.S. 9:331.

---

[1] We will limit our historical analysis to matters relevant to this appeal.

The parties appeared before a hearing officer ("HO") on July 26, 2016, following which the HO filed recommendations into the record. Among other things, the HO recommended that the parties share joint custody of Isaiah, with Ms. Denis being the domiciliary custodial parent and Mr. Thomas exercising visitation according to a detailed schedule. Mr. Thomas was ordered to pay $246 per month in child support.[2] Several days later, Mr. Thomas filed an objection to the recommendation made by the HO. Following a September 12, 2016 hearing, the trial court made the HO's recommendations the interim order of the court, subject to a few minor modifications regarding the visitation schedule.

Beginning in mid-August 2017, Mr. Thomas, in proper person, filed multiple rules for contempt alleging that Ms. Denis committed various acts interfering with and/or preventing his court-ordered visitation. He also filed a motion to modify interim custody and child support. Contrarily, after Mr. Thomas failed to pay a single penny of child support to her, Ms. Denis filed a single motion for contempt against him.

The judgment being appealed was signed following a January 18, 2017 hearing at which Ms. Denis was represented by counsel and Mr. Thomas appeared pro se. Before addressing the merits, the trial court noted that Mr. Thomas's current counsel had filed a motion to withdraw that morning, indicating that Mr. Thomas no longer wanted his services. Upon having Mr. Thomas confirm his desire to terminate counsel, the trial court signed the motion to withdraw, but advised Mr. Thomas that his lack of representation could put him at a disadvantage. After some discussion, the parties agreed to continue all issues regarding contempt to a later date and to go forward with the issues of child support, custody, and

---

[2] The HO calculated the amount of child support on a Joint Obligation Worksheet which was attached to the recommendations filed on July 26, 2016.

visitation.[3]  The hearing was then recessed to give the parties an opportunity to reach an agreement regarding those matters.  Upon resumption of the hearing, the parties put a stipulation on the record agreeing to share joint custody of Isaiah, with Ms. Denis being named the domiciliary parent and Mr. Thomas being entitled to reasonable visitation.  The parties also had an agreement as to when Mr. Thomas would exercise visitation from March 2017 forward.  The trial court then assisted the parties in working out an agreement regarding Mr. Thomas's visitation schedule in January and February 2017 in light of some upcoming changes in his work schedule.  With the help of the trial court, the parties also came to an agreement regarding the amounts of past and future child support owed from Mr. Thomas to Ms. Denis.  Mr. Thomas was sworn in and agreed on the record to each item relating to visitation and child support.  At the conclusion of the hearing, the trial court ordered the mother's attorney to prepare a judgment and send it to the trial court and the father.  The trial court explained that it would not sign the judgment for five days to give Mr. Thomas the opportunity to dispute any part of the judgment.  In such case, Mr. Thomas was directed to telephone the trial court, and if it determined that the "problem [wa]s real," it would attempt to fix the problem with the mother's attorney or reset the matter for hearing.[4]  The trial court stated that it would sign the proposed judgment if five days passed without any call from Mr. Thomas.

---

[3] According to the transcript, the trial court observed that the father had filed more than ten motions for contempt when the alleged violations could have all been presented in a single motion.  Thereafter, the father admitted that he was aware that his "filings for contempt [we]re kind of absurd."  In addition, when questioned about a motion for contempt filed on behalf of the mother, Mr. Thomas admitted that he had not paid any child support up until that time.  He explained that his nonpayment was due to the fact that Ms. Denis had referred to Isaiah by her last name rather than "Thomas" on the child-support paperwork.

[4] Mr. Thomas was told not to send the trial court a letter or file a motion if he disagreed with any part of the proposed judgment.

A judgment prepared by Ms. Denis's attorney was signed on February 9, 2017. The judgment referenced a joint custody plan which was attached to and made a part of the judgment. Mr. Thomas timely appealed and is now before this court, in proper person, asserting that: 1) the judgment did not reflect what the parties agreed to with regard to January and February 2017, thus conflicting with his work schedule and making it impossible for him to exercise visitation during those months; 2) the judgment did not incorporate the parties' agreement that he would be furnished with a bill showing the cost of the child's day care; and 3) although he called the trial court to point out the inconsistencies between the proposed judgment and the agreement reached in court, those inconsistencies were not addressed by the trial court.

## DISCUSSION

"Although the courts may not always hold a layman to the same standards of skill and judgment that is required of an attorney, when he chooses to appear in proper person, he assumes all responsibility for his own inadequacy and lack of knowledge of procedural and substantive law." *Deville v. Watch Tower Bible & Tract Soc'y, Inc.*, 503 So.2d 705, 706 (La.App. 3 Cir. 1987). Nevertheless, in the past, this court has given more leeway to pro se litigants who "lack[] formal training in the law and its rules of procedure." *Arterburn v. Arterburn*, 15-22, p. 3 (La.App. 3 Cir. 10/7/15), 176 So.3d 1163, 1167.[5]

Under normal circumstances, "Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or

---

[5] In *Arterburn*, the former wife, in proper person, appealed a judgment partitioning the community property between her and her former husband. On appeal, this court noted the following about the judge who presided over the matter in the trial court: "In reading the transcripts and reasons for ruling, we perceived an articulate, well-reasoned, well-intentioned, patient, and enthusiastic jurist who encouraged and counseled the Arterburns from the very beginning of this litigation, and who had the best interest of this family as the goal of his rulings." *Arterburn*, 176 So.3d at 1175. The same can be said about the trial court in this case.

4

assignments of error, unless the interest of justice clearly requires otherwise." Uniform Rules—Courts of Appeal, Rule 1–3. In this case, we interpret the trial court's comments urging Mr. Thomas to call the court if he disputed any part of the proposed judgment as an attempt to save Mr. Thomas the expense of filing unnecessary pleadings. Nevertheless, we can understand why Mr. Thomas failed to file a motion for new trial after the trial court signed the proposed judgment, and in the "interest of justice," we will review his assigned errors even though they were not formally "submitted to the trial court" in a post-trial motion before he filed this appeal. In the future, we order the parties to comply with La.Dist.Ct.R. 9.5[6] before presenting the trial court with any judgment, ruling, or order.

### *Alleged Inconsistencies Between the Stipulation and the Signed Judgment*

Because the substance of Mr. Thomas's first and third assigned errors overlap, we will address those errors simultaneously. In his appellant brief, Mr. Thomas acknowledges that "a stipulated agreement was reached" between him and Ms. Denis. Nevertheless, he claims that "the arrangement agreed upon was not executed causing multiple days of visitation to be lost between [him] and the minor child." In her brief in opposition to Mr. Thomas's appeal, Ms. Denis asserts that because the trial court "made no factual findings nor any conclusions of law[],

---

[6] **Rule 9.5 Court's Signature; Circulation of Proposed Judgment; Request for Reasons for Judgment**

(a) All judgments, orders, and rulings requiring the court's signature shall either be presented to the judge for signature when rendered or, if presented later, contain the typewritten name of the judge who rendered the judgment, order, or ruling.

(b) If presented later, the responsible attorney or the self-represented party shall circulate the proposed judgment, order, or ruling to counsel for all parties and to self-represented parties and allow at least five (5) working days for comment before presentation to the court. When submitted, the proposed judgment, order, or ruling shall be accompanied by a certificate stating: the date of mailing; the method of delivery of the document to other counsel of record and to self-represented parties; whether any opposition was received; and the nature of the opposition.

there is no decision of the court that should be overturned on appeal." Neither party cites any law or jurisprudence in their brief to this court.

In *Fitzgerald v. Fitzgerald*, 09-1259 (La.App. 3 Cir. 4/7/10) (unpublished opinion), a former husband appealed a trial court judgment finding that, pursuant to a consent judgment entered into by him and his ex-wife, he was responsible for paying her health insurance premiums. This court affirmed, noting:

> A consent judgment is a bilateral contract in which parties adjust their differences by mutual consent and thereby put an end to a lawsuit with each party balancing hope of gain against fear of loss. La.Civ.Code art. 3071; *Plaquemines Parish Government v. Getty Oil Co.,* 95-2452 (La.5/21/96); 673 So.2d 1002. "A judgment, whether it results from the assent of the parties or is the result of a judicial determination after a trial on the merits, is and should be accorded sanctity under the law." *Id.* at 1006.
>
> . . . .
>
> Although it has the same binding force, a consent judgment is not one rendered by a trial court as a result of a trial on the merits. A consent judgment has binding force from the presumed voluntary acquiescence of the parties and not from adjudication by the trial court. . . .
>
> *Deville v. Rapides Area Planning Com'n,* 97-1437, p. 9 (La.App. 3 Cir. 6/17/98), 715 So.2d 577, 580-81, *writ denied,* 98-1943 (La .10/30/98), 727 So.2d 1167; *Peeler v. Dural,* 06-936 (La.App. 5 Cir. 4/11/07), 958 So.2d 31.

*Fitzgerald*, 09-1259, pp. 2-3. In addition, La.Code Civ.P. art. 2085, titled "Limitations on appeals," provides as follows:

> An appeal cannot be taken by a party who confessed judgment in the proceedings in the trial court or who voluntarily and unconditionally acquiesced in a judgment rendered against him. Confession of or acquiescence in part of a divisible judgment or in a favorable part of an indivisible judgment does not preclude an appeal as to other parts of such judgment.

*See also Hill v. Hill*, 471 So.2d 1130 (La.App. 3 Cir. 1985).

After comparing the transcript of the January 18, 2017 hearing to the provisions contained in the February 9, 2017 judgment and incorporated joint

6

custody plan, we have discovered two minor discrepancies. The joint custody plan provided that Mr. Thomas exercise visitation on February 4 and 18, rather than on February 5 and 19, as agreed to in the transcript. Accordingly, we render judgment directing the trial court to award Mr. Thomas two days of make-up visitation.

### *Child Care Bill*

In his third assignment of error, Mr. Thomas complains that "the child care bill condition was not referecned [sic] [] in the custodial agreement." He contends that while "[t]he child support amount is ordered," it "remains in question pending proof on the true daycare amount." Ms. Denis does not address the merits of this assigned error in her appellee brief.

When the issue of child support was addressed at the January 18, 2017 hearing, Mr. Thomas agreed to pay $498 per month retroactive to December 7, 2016, provided that Ms. Denis furnish him with a copy of a bill showing that Isaiah's child care cost $105 per week as she claimed. The trial court agreed that Mr. Thomas's request was "totally reasonable," and it stated that the amount of child support agreed to by the parties was "subject to [Ms. Denis's attorney] providing [Mr. Thomas] the bill that shows that it's $105." Thereafter, counsel for Ms. Denis agreed to provide Mr. Thomas with a copy of the child care bill and to submit an amended judgment reducing the amount of child support owed if the bill was different than the amount that he represented in open court.

We note that Section C of the joint custody plan, titled "RIGHT OF ACCESS AND INFORMATION," gives both Mr. Thomas and Ms. Denis the right to "immediate access, from third [parties] to records and information pertaining to the minor child, without permission from the other" and directs that any "third party shall not withhold records for any reason from the requesting parent." Thus, Mr. Thomas has the right to request that Isaiah's child care provider furnish him

7

with a copy of a bill showing the amount charged per week. Nevertheless, we conclude that counsel for Ms. Denis was obliged to give Mr. Thomas a copy of Isaiah's child care bill given his agreement to do so in open court.

## DECREE

For the foregoing reasons, we render judgment directing the trial court to award Mr. Thomas two days of make-up visitation. In addition, we render judgment ordering counsel for Ms. Denis to give Mr. Thomas a copy of Isaiah's child care bill if he has not already done so. In all other respects, the judgment of the trial court is affirmed. All costs of this appeal are assessed to Mr. Jamarcus Thomas.

**JUDGMENT RENDERED AND OTHERWISE AFFIRMED.**